**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

MARCELL HILL,

    Plaintiff,

v.                                              Case No. 8:22-cv-1854-WFJ-MRM

UNITED STATES OF AMERICA.

    Defendant.
_____/

## **ORDER**

Before the Court is Defendant United States of America's Motion to Dismiss with prejudice (Dkt. 6) Plaintiff Marcell Hill's Complaint (Dkt. 1). Ms. Hill has responded in opposition (Dkt. 10), and the United States has not replied. Upon careful review, the Court denies the United States' Motion to Dismiss with prejudice. The Court instead dismisses Ms. Hill's Complaint without prejudice, permitting her to reallege a more coherent complaint.

## BACKGROUND

### I.    The Facts Underlying Ms. Hill's Claims

This dispute arises from an alleged incident that occurred at a California apartment in April 1999 while Ms. Hill was serving in the United States Marine Corps ("USMC"). Dkt. 1 at 1–3. Ms. Hill claims that, after being invited to dinner

by senior officers, she and her romantic partner Lt. Colonel Brian Fanning[1] "were drugged, gang raped, sodomized, verbally threatened, and psychologically tortured with military tactics." *Id.* at 4. Ms. Hill further claims that she had no recollection of the 1999 incident until 2016. *Id.* at 5. Since then, Ms. Hill believes that Naval Criminal Investigative Service ("NCIS") agents and USMC officers have carried out a "conspiracy to cover up the hazing incident in order to protect high ranking USMC officers." Dkt. 10 at 3. The Court recounts the facts as alleged in Ms. Hill's Complaint.

On March 3, 2016, Ms. Hill began recalling certain peripheral events surrounding the 1999 incident that she had previously lost or blocked out due to being drugged and traumatized. Dkt. 1 at 5. Thereafter, Ms. Hill made numerous attempts to reestablish contact with Lt. Colonel Fanning. *Id.* Her attempts were unsuccessful. *Id.* On February 7, 2017, Ms. Hill finally called the USMC Manpower and Support Unit in Washington, D.C. *Id.* "The phone was handed to a Marine that pretended to be Fanning[.]" *Id.* "He told [Ms. Hill] she was crazy." *Id.*

According to Ms. Hill, these efforts triggered an intimidation and harassment campaign against her. First, NCIS Agent Angel Cruz purportedly began intimidating Ms. Hill through the phone. *Id.* Agent Cruz allegedly told Ms.

---

[1] According to Ms. Hill, Lt. Colonel Brian Fanning held the lower rank of Captain at the time of the alleged incident. Dkt. 1 at 3.

Hill to stop trying to contact Lt. Colonel Fanning and threatened her with a restraining order. *Id* at 5–6. Ms. Hill responded by reporting Agent Cruz to the NCIS tip line in 2017, but she received no response. *Id.* at 6. Second, from 2017 through 2018, unidentified individuals allegedly began harassing Ms. Hill by "pretending to be Fanning via phone and Fanning's military issue email." *Id.* Ms. Hill reported the harassment and "suspected hacking of Fanning's military email via the NCIS tip line[,]" but she received no response. *Id.* Finally, Ms. Hill asserts that unidentified individuals contacted her employer "in an attempt to ger [her] fired." *Id.*

On January 19, 2020, Ms. Hill began to experience flashbacks and memories of the 1999 incident itself. *Id.* at 2; Dkt. 10 at 5. Ms. Hill maintains that XO Major Daniel Deamon, Captain Jack Perrin, and Captain Hank Vanderborght directly participated in the rape of her and Lt. Colonel Brian Fanning. Dkt. 1 at 4. According to Ms. Hill, Major Paul Pond was initially present but chose to leave without participating or intervening. *Id.* at 3. Captain Jason Gerrin and his civilian girlfriend purportedly remained at the apartment throughout the incident, but they also refused to participate or intervene. *Id.* Captain Mando Avila as well as another unidentified USMC officer were also allegedly involved, though the nature of their involvement is unclear.

In February 2020, Ms. Hill reported her victimization to NCIS. *Id.* at 6. Approximately two months later, however, her case was closed due to a statute of limitations issue. *Id.* Ms. Hill claims that it was reopened in April 2021 "after much persistence" "due to [a] legal change." *Id.* "The NCIS investigation proceeded slowly, but [Ms. Hill] was pleased with the forward progression and monthly updates from the lead investigator Agent Antonia Spodarek." *Id.*

According to Ms. Hill, her criminal case began to suffer setbacks after she signed a representation agreement with Victims Legal Advocate ("VLC") Major Josh Keefe on September 4, 2021. *Id.* at 6–7. Major Keefe failed to obtain protective orders against the then-identified suspects. *Id.* at 7. Further, Ms. Hill claims that she "observed manipulative and dishonest behavior" from Major Keefe, including Major Keefe stating that there were no pictures from Ms. Hill's 1999 Marine Squadron (which she claims is a lie). *Id.* Ms. Hill requested a new VLC, but her request was denied. *Id.* Eventually, Major Keefe informed Ms. Hill that there was little to no progress being made in the investigation. *Id.*

On December 20, 2021, Ms. Hill met with Major Keefe and Agent Spodarek for a second interview at MacDill Air Force Base in Tampa, Florida. *Id.* at 8. Ms. Hill "thought the interview very odd." *Id.* Ms. Hill also suspected that "she was about to be offered compensation for her damages in turn for dropping the investigation and potential charges." *Id.* Yet, no offer materialized.

At this point, Ms. Hill decided to pursue an alternative strategy. On January 8, 2022, Ms. Hill commenced the administrative process under the Federal Tort Claims Act, requesting sixty million dollars. *Id.* And, on January 16, 2022, Ms. Hill terminated her attorney-client relationship with Major Keefe, citing "lies, misleading information/directives" as well as a continual minimization of "the facts and severity of the case." *Id.* at 9.

Thereafter, Ms. Hill claims that the conspiracy to delegitimize her only intensified. First, on February 23, 2022, "FBI agents appeared at [Ms. Hill's] home to admonish her for sending romantic emails to [Lt. Colonel] Fanning." *Id.* Ms. Hill, however, is "confident that the complaint did not come from [Lt. Colonel] Fanning himself." *Id.* Second, Ms. Hill claims that the lawyers overseeing her case became antagonistic. For instance, in a phone conference with Judge Advocate General ("JAG") Prosecutor Major Gabriel Boenecke, JAG Prosecutor Michael Cook, and Civilian Prosecutorial Advisor Isabel Pauley, Ms. Pauley allegedly "twisted [Ms. Hill's] words to imply that [she] was the individual that could potentially be harmful, not the suspects." *Id.* at 10. Major Boenecke also "advised [Ms. Hill] that she had no proof that she was in danger and [that] protective orders from the command would likely be denied." *Id.* Finally, Agent Spodarek contacted Ms. Hill's sister to indicate a concern for Ms. Hill's welfare. *Id.* Ms. Hill's sister—

whom Ms. Hill believes was under duress—approved a welfare check that was conducted by Pinellas County Police Officers on May 13, 2022. *Id.*

Increasingly unhappy with the progress of her case, Ms. Hill made multiple requests for more information. *Id.* at 11. They went largely unanswered. *Id.* Notwithstanding, Ms. Hill was eventually contacted by Lt. Colonel Troy Campbell. *Id.* Lt. Colonel Campbell informed Ms. Hill that he was supervisory counsel and scheduled a phone conference with Ms. Hill. *Id.* Lt. Colonel Campbell also informed Ms. Hill that an NCIS Agent named "Montgomery" had replaced Agent Spodarek. *Id.* Ms. Hill questions whether Lt. Colonel Campbell actually held a supervisory position. *Id.* She also "questions if 'Montgomery' was present for the call, had any affiliation with her case, or even exists." *Id.* at 12.

Ultimately, Lt. Colonel Campbell notified Ms. Hill that "the Commander(s) had concluded that there was no sufficient evidence to bring charges, and [that] the criminal case was being closed." *Id.* Ms. Hill claims that she filed seven Investigator General complaints in response. *Id.* She also claims that an investigation based on her complaints is ongoing. *Id.*

## II.   Ms. Hill's Claims

Based on the allegations set forth above, Ms. Hill brings seventeen counts of negligence. *Id.* at 13–20. Counts I through VI allege negligence by the Marine Officers (presumably in their official capacity) who participated both directly and

indirectly in the alleged 1999 incident. *Id.* at 13–16. Counts VII through X allege negligence by the United States Navy for a failure to institute various protective measures such as reporting channels, preventative training, and safeguards for junior officers. *Id.* at 16–17. Counts XI, XII, and XIV allege negligence by NCIS Agents Angel Cruz, Anna Ryan, Will Villalobos, and Antonia Spodarek for improperly carrying out the duties of their office. *Id.* at 17–18. And, Counts XIII, XV, XVI, and XVII allege negligence by JAG Officers Major Joshua Keefe, Major Gabriel Boenecke, Lt. Colonial Troy Campbell as well as Civilian Prosecutorial Advisor Isabel Pauley for various failings throughout their management of Ms. Hill's criminal case. *Id.* at 18–20.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." At the pleading stage, Rule 8 is read in conjunction with Rule 12(b)(6). *Prunty v. Arnold & Itkin LLP*, No. 2:17-cv-506-FtM-99CM, 2017 WL 5971681, at *1 (M.D. Fla. Dec. 1, 2017).

A complaint withstands dismissal under Rule 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard does not require detailed factual allegations but demands more than

an unadorned accusation. *Id.* All facts are accepted as true and viewed in the light most favorable to the Plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

At the dismissal stage, a court may consider matters judicially noticed, such as public records, without converting a defendant's motion to one for summary judgment. *See Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 52 (11th Cir. 2006). Additionally, documents may be considered at the dismissal stage if they are central to, referenced in, or attached to the complaint. *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Documents attached to a motion to dismiss may also be considered if the documents are (1) central to the plaintiff's claim, and (2) undisputed (if their authenticity is not challenged). *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## DISCUSSION

The United States moves to dismiss Ms. Hill's entire Complaint with prejudice. Dkt. 6 at 1. The United States argues that Ms. Hill's claims "are excepted under the Federal Tort Claims Act ('FTCA'), are untimely under 28 U.S.C. § 2401(b), are subject to the discretionary function exception under 28 U.S.C. § 2680(a), fail to state valid causes of action under the FTCA, [or] are barred by absolute immunity." *Id.*

Irrespective of the United States' arguments, however, the Court finds that Ms. Hill's Complaint constitutes a shotgun pleading. This, first, must be corrected by Ms. Hill. Complaints that violate Federal Rules of Civil Procedure 8(a)(2) or 10(b) "are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has recognized four basic types of shotgun pleadings: (1) a complaint that contains multiple counts where each count adopts the allegations of all preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that fails to separate into different counts each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions or which of the defendants the claim is brought against. *Id.* at 1321–23. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Here, each of Ms. Hill's Counts incorporates by reference "all allegations set forth above." *See* Dkt. 1. In addition, Ms. Hill's Complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322. In Count XVII, for instance, Ms. Hill

alleges that "[o]n information and belief, [Lt. Colonel Campbell] allegedly accepted a monetary bribe from one or more individuals representing the suspects or the suspects themselves." Dkt. 1 at 20. This is an unadorned, conclusory factual accusation that appears entirely divorced from Ms. Hill's negligence claim against Lt. Colonel Campbell. It also seems to arise out of thin air given the absence of a reference to bribery anywhere in the fact section of Ms. Hill's Complaint. In Count XVI, moreover, Ms. Hill claims that Ms. Pauley "negligently failed to acknowledge and/or disclose a conflict of interest that should have prevented her from legal involvement or guidance on [Ms. Hill's] case." *Id.* at 19. The Court is unsure if this is a reference to Ms. Hill's earlier allegation that "Ms. Pauley twisted [Ms. Hill's] words [in a meeting] to imply that [Ms. Hill] was the individual that could potentially be harmful[,]" or a reference to some deeper involvement that Ms. Pauley might have had in the wider conspiracy that Ms. Hill alleges took place throughout the investigation. *Id.* at 9–10.

    In sum, Ms. Hill's Complaint fails to give the United States and the Court adequate notice of the grounds upon which her individual negligence claims rest. The connections between her often conclusory factual allegations and her various theories of negligence are simply unclear. Ms. Hill may reassert her claims in an amended complaint. The present Complaint is too long, suffers as a shotgun pleading, and boarders at times on incoherence. Ms. Hill would be *well advised* to

seek help of legal counsel. She should also study the present Motion to Dismiss and address the points therein. It is not the Court's job here to coach Ms. Hill. Suffice it to say, any amended complaint must be a vast improvement, or it may not survive.

## CONCLUSION

The Court is hesitant to consider dismissing Ms. Hill's pro se Complaint with prejudice without first giving her the opportunity to rectify these shortcomings. Ms. Hill may amend her Complaint in accordance with this Order. Ms. Hill should be advised, however, that the Court has "little tolerance for shotgun pleadings." *Arrington v. Green*, 757 Fed. App'x 796, 797 (11th Cir. 2018).

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) The United States' Motion to Dismiss with prejudice (Dkt. 6) is **DENIED**.

(2) Ms. Hill's Complaint (Dkt. 1) is dismissed without prejudice.

(3) Ms. Hill may amend her Complaint in compliance with the Order by or before December 31, 2022. If no proper amended complaint is on file by that date, the Court will close this case.

**DONE AND ORDERED** at Tampa, Florida, on December 2, 2022.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:

Counsel of Record