UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MARCELL HILL**,

    Plaintiff,

v.                                Case No. 8:22-cv-1854-WFJ-MRM

**UNITED STATES OF AMERICA**,

    Defendant.
_____/

## ORDER

Before the Court is Defendant United States of America's Motion to Dismiss with prejudice (Dkt. 16) Plaintiff Marcell Hill's First Amended Complaint (Dkt. 13). Ms. Hill has responded in opposition (Dkt. 17), and the United States has not replied. Upon careful review, the Court denies the United States' Motion to Dismiss with prejudice. The Court dismisses Ms. Hill's First Amended Complaint without prejudice and permits her one final attempt to properly plead her claims.

## BACKGROUND

This dispute arises from an alleged incident that occurred at a California apartment in April 1999. Dkt. 13 at 1–3. Ms. Hill claims that, after being invited to dinner by United States Marine Corps ("USMC") officers, she and her romantic

partner Lt. Colonel Brian Fanning[1] "were drugged, gang raped, sodomized, verbally threatened, and psychologically tortured with military tactics[.]" *Id.* at 5. Ms. Hill further claims that she had no recollection of the 1999 incident until 2016. *Id.* at 6. Since then, Ms. Hill believes that various government agents have carried out a "conspiracy to delegitimize [her] and manipulate her into dropping the investigation and charges." Dkt. 17 at 16. The Court recounts the facts as alleged by Ms. Hill.

### I.     Factual History

On March 3, 2016, Ms. Hill began recalling peripheral events surrounding the 1999 incident that she had previously lost or blocked out. Dkt. 13 at 6–7. Ms. Hill made numerous attempts to reestablish contact with Lt. Colonel Fanning, but her attempts were unsuccessful. *Id.* at 7. On February 7, 2017, Ms. Hill called the USMC Manpower and Support Unit in Washington, D.C. *Id.* Ms. Hill "asked to speak with Lt. Colonel Fanning, yet the phone was handed to a Marine that pretended to be [Lt. Colonel Fanning] and [the pretender] told [Ms. Hill] she was crazy." *Id.*

Ms. Hill claims that these efforts triggered an intimidation and harassment campaign against her. *Id.* First, Naval Criminal Investigative Service ("NCIS") Agent Angel Cruz purportedly began intimidating Ms. Hill through the phone. *Id.* Agent Cruz allegedly told Ms. Hill to stop trying to contact Lt. Colonel Fanning and

---

[1] According to Ms. Hill, Lt. Colonel Brian Fanning held the lower rank of Captain at the time of the alleged incident. Dkt. 13 at 4.

threatened her with a restraining order. *Id.* Ms. Hill responded by reporting Agent Cruz to the NCIS tip line in 2017, but she received no response. *Id.* at 8. Second, from 2017 through 2018, unidentified individuals allegedly began harassing Ms. Hill by "pretending to be Lt. Colonel Fanning via phone and [Lt. Colonel Fanning's] military issue email." *Id.* Ms. Hill reported the harassment and "suspected hacking of Fanning's military email via the NCIS tip line[,]" but she received no response. *Id.* Third, Ms. Hill asserts that unidentified individuals contacted her employer "in an attempt to ger [her] fired." *Id.*

On January 19, 2020, Ms. Hill experienced "the first PTSD flashback of her rape[.]" *Id.* Ms. Hill maintains that Major Daniel Deamon, Captain Jack Perrin, and Captain Hank Vanderborght directly participated while Major Paul Pond was initially present but chose to leave without participating or intervening. *Id.* at 5. Captain Jason Gerrin and his civilian girlfriend purportedly remained at the apartment throughout the incident, but they also refused to participate or intervene. *Id.* at 4, 24. In addition, Captain Mando Avila, as well as another unidentified USMC officer, were also allegedly involved through their procurement and delivery of unknown drugs to Major Deamon. *Id.* at 4.

On February 16, 2020, Ms. Hill reported her victimization to Pinellas County Sheriff's Office "so the report could be teletyped to the San Diego Sex Crimes Unit." *Id.* at 9. The San Diego Sex Crimes Unit nevertheless "refused to investigate"

3

because "NCIS Agent Cruz informed [the San Diego Police Department] that Lt. Colonel Fanning . . . placed a restraining order on [Ms. Hill.]" *Id.* Ms. Hill claims that she has never found a record of Lt. Colonel Fanning's restraining order. *Id.* Ms. Hill also maintains that "Agent Cruz's unlawful interference . . . left her with no option but to report and pursue a criminal investigation with the NCIS[.]" *Id.*

On March 31, 2020, NCIS opened an investigation. *Id.* Approximately two months later, however, Ms. Hill's case was allegedly closed due to a statute of limitations issue. *Id.* at 10. Ms. Hill claims that it was reopened in April 2021 "after much persistence . . . due to [a] legal change." *Id.* "The re-opened NCIS investigation proceeded slowly, but [Ms. Hill] was pleased with the forward progression and monthly updates from the lead investigator Agent Antonia Spodarek." *Id.*

According to Ms. Hill, her criminal case began to suffer setbacks after she signed a representation agreement with Victims Legal Advocate ("VLC") Major Josh Keefe (presumably at their first meeting) on September 4, 2021. *Id.* at 11. Major Keefe failed to obtain protective orders against the then-identified suspects. *Id.* In addition, Major Keefe allegedly displayed "manipulative and dishonest behavior[.]" *Id.* Ms. Hill requested a new VLC, but her request was denied. *Id.* at 12. Eventually, Major Keefe informed Ms. Hill that there was little to no progress being made in the investigation. *Id.*

4

On December 20, 2021, Ms. Hill met with Major Keefe and Agent Spodarek for a second interview at MacDill Air Force Base in Tampa, Florida. *Id.* at 13. Ms. Hill "thought the interview very odd" and suspected that "she was about to be offered compensation for her damages in turn for dropping the investigation and potential charges." *Id.* at 14. No offer materialized.

"Feeling conspired against and with depleting options," Ms. Hill decided to pursue an alternative strategy. *Id.* On January 8, 2022, Ms. Hill commenced the administrative process under the Federal Tort Claims Act, requesting sixty million dollars. *Id.* Ms. Hill also terminated her attorney-client relationship with Major Keefe "for breaching his heightened duty of care[.]" *Id.*

As a result, Ms. Hill claims that the conspiracy to delegitimize her intensified. First, on February 23, 2022, "FBI agents appeared at [Ms. Hill's] home to admonish her for sending romantic emails to [Lt. Colonel] Fanning." *Id.* Ms. Hill is "confident that the complaint did not come from [Lt. Colonel] Fanning himself." *Id.* Second, Ms. Hill claims that the lawyers overseeing her case became antagonistic. For instance, in a phone conference with Judge Advocate General ("JAG") Prosecutor Major Gabriel Boenecke, JAG Prosecutor Michael Cook, and Civilian Prosecutorial Advisor Isabel Pauley, Ms. Pauley allegedly "twisted [Ms. Hill's] words to imply that [she] was the individual that could potentially be harmful, not the suspects." *Id.* at 16. Major Boenecke also "advised [Ms. Hill] that she had no proof that she was

in danger and [that] protective orders from the command would likely be denied." *Id.* Finally, Agent Spodarek contacted Ms. Hill's sister to indicate a concern for Ms. Hill's welfare. *Id.* at 17. Ms. Hill's sister—whom Ms. Hill believes was under duress—approved a welfare check that was conducted by Pinellas County Police Officers on May 13, 2022. *Id.*

Increasingly unhappy with the progress of her case, Ms. Hill made multiple requests for more information. *Id.* at 18. They went largely unanswered. *Id.* Notwithstanding, Ms. Hill was eventually contacted by Lt. Colonel Troy Campbell. *Id.* at 19.

Lt. Colonel Campbell informed Ms. Hill that he was supervisory counsel and scheduled a phone conference with Ms. Hill. *Id.* In addition, Lt. Colonel Campbell informed Ms. Hill that an NCIS Agent named "Montgomery" had replaced Agent Spodarek. *Id.* at 20. Ms. Hill questions whether Lt. Colonel Campbell actually held a supervisory position. *Id.* She also questions if "Montgomery" was "present for the phone call, had any affiliation with her case, or even exists." *Id.*

Ultimately, Lt. Colonel Campbell notified Ms. Hill that "the Commander(s) had concluded that there was no sufficient evidence to bring charges, and [that] the criminal case was being closed." *Id.* Ms. Hill claims that she filed seven Investigator General complaints in response. *Id.* at 21. She also claims that an investigation based on her complaints is ongoing. *Id.*

### II.     Procedural History

On August 12, 2022, Ms. Hill brought a complaint alleging seventeen counts of negligence. Dkt. 1 at 13–20. In response, the United States moved to dismiss Ms. Hill's entire original complaint with prejudice. Dkt. 6. The Court declined to dismiss Ms. Hill's claims with prejudice and instead dismissed Ms. Hills complaint without prejudice as a shotgun pleading. Dkt. 12 at 11. The Court cautioned that "any amended complaint must be a vast improvement, or it may not survive." *Id.*

On December 30, 2022, Ms. Hill filed her First Amended Complaint. Dkt. 13. Therein, Ms. Hill alleges six counts: Count I—"Gross Negligence, Conspiracy, & Negligent Infliction of Emotional Distress" against retired Colonel (former Major) Deamon, retired Colonels (former Captains) Vanderborght and Perrin, retired Lt. Colonel Avila, and an unidentified USMC officer; Count II—"Gross Negligence, Conspiracy, & Negligent Infliction of Emotional Distress" against retired Colonel (former Major) Pond and retired Lt. Colonel (former Captain) Gerrin; Count III—"Gross Negligence, Conspiracy, & Negligent Infliction of Emotional Distress" against NCIS Agent Cruz, Major Keefe, and Lt. Colonel Campbell; Count IV—"Gross Negligence, Conspiracy, & Negligent Infliction of Emotional Distress" against Major Boenecke, Ms. Pauley, and NCIS Agents Spodarek, Villalobos, and Ryan; Count V—Negligence against retired Colonel Dodge (allegedly the

Commanding Officer of HMH 466); and Count VI—Negligence against NCIS Agent Cruz. *Id.* at 22–29.

The United States now moves, for various reasons, to dismiss Ms. Hill's First Amended Complaint with prejudice. Dkt. 16 at 1–2.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." At the pleading stage, Rule 8 is read in conjunction with Rule 12(b)(6). *Prunty v. Arnold & Itkin LLP*, No. 2:17-cv-506-FtM-99CM, 2017 WL 5971681, at *1 (M.D. Fla. Dec. 1, 2017).

A complaint withstands dismissal under Rule 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard does not require detailed factual allegations but demands more than an unadorned accusation. *Id.* All facts are accepted as true and viewed in the light most favorable to the Plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

At the dismissal stage, a court may consider matters judicially noticed, such as public records, without converting a defendant's motion to one for summary judgment. *See Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 52 (11th Cir. 2006). Additionally, documents may be considered at the dismissal stage if they are

central to, referenced in, or attached to the complaint. *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Documents attached to a motion to dismiss may also be considered if the documents are (1) central to the plaintiff's claim, and (2) undisputed (if their authenticity is not challenged). *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## DISCUSSION

Ms. Hill's First Amended Complaint constitutes a shotgun pleading. Complaints that violate Federal Rules of Civil Procedure 8(a)(2) or 10(b) "are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has recognized four basic types of shotgun pleadings: (1) a complaint that contains multiple counts where each count adopts the allegations of all preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that fails to separate into different counts each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions or which of the defendants the claim is brought against. *Id.* at 1321–23. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or

another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

As an initial matter, Ms. Hill's First Amended Complaint fails to separate into different counts each cause of action or claim for relief. This much is apparent from a cursory analysis of Counts I–IV. Indeed, each one appears to assert three causes of action (gross negligence, conspiracy, and negligent infliction of emotional distress) against multiple individuals. Dkt. 13 at 22–28.

This blending of claims creates an unacceptable level of ambiguity concerning what exactly Ms. Hill means to assert. Take, for instance, paragraph seventy-seven (contained in Count I):

> Retired Colonel (Major) Dan Deamon acted in the scope of his authority as a senior USMC officer and XO as second in command of HMH 466 when he acted with Gross Negligence and ordered several subordinate officers [to] engage in a conspiracy to organize, facilitate, and cover up the hazing/initiation of a peer subordinate that resulted in physical and psychological injuries to the Plaintiff, in addition to the Negligent Infliction of Emotional Distress.

Dkt. 13 at 22. On one hand, this could represent an attempt to assert individual causes of action (based on independent facts) for gross negligence, conspiracy, and negligent infliction of emotional distress against Major Deamon. On the other hand, this could represent an attempt to assert negligence through a conspiracy-based breach of care that resulted in emotional distress. Either way, it is unclear whether Ms. Hill bases her negligence claims on her allegations rape, her allegations of

10

conspiracy, or both. This ambiguity is only increased by paragraph eighty, wherein Ms. Hill concludes Count I by reciting the elements of negligence without clarifying which of her previously incorporated factual allegations support her various negligence claims (or the elements thereof). *Id.* at 23. Simply put, Count I (as well as Counts II–IV) fail to give the United States adequate notice of the claims against it and the grounds upon which each claim rests.

Equally problematic is Ms. Hill's reliance on conclusory and contradictory facts to establish a conspiracy against her. Ms. Hill claims in Count III that:

> Lt. Colonel Troy Campbell was acting the scope of his authority as Regional Trial Counsel with Gross Negligence when he fabricated NCIS Agent "Montgomery" and possibly the existence of Prosecutor Michael Cook. He engaged in Negligent Infliction of Emotional Distress of the Plaintiff and Conspiracy to delegitimize her, as well as obstruct justice to protect high ranking USMC officers.

*Id.* at 25. At the same time, Ms. Hill claims that she "questions Lt. Colonel Campbell's statement of being the supervisory counsel[,]" and that she "remains unaware if 'Montgomery' is male or female and questions if 'Montgomery' . . . even exists." *Id.* at 20. It is unclear how Ms. Hill moves from a lack of knowledge concerning "Montgomery" in paragraph seventy to an accusation that Lt. Colonel Campbell fabricated "Montgomery" in paragraph eighty-eight. It is also unclear whether Ms. Hill is claiming that Lt. Colonel Campbell held a supervisory position over Major Boenecke or not. Moreover, lacking from Ms. Hill's factual allegations is anything connecting the alleged conspiracy against her to the goal of protecting

high ranking USMC officers. These disconnects run throughout Ms. Hill's First Amended Complaint, and they are too numerous to fully recount here.

Notwithstanding, the Court will not yet dismiss Ms. Hill's claims with prejudice. Ms. Hill will be afforded another chance to amend her pleadings given her status as a *pro se* litigant. This will be Ms. Hill's third and final attempt to adequately plead her case. *See Arrington v. Green*, 757 Fed. App'x 796, 797 (11th Cir. 2018) (stating that courts have "little tolerance for shotgun pleadings").

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) The United States' Motion to Dismiss with prejudice (Dkt. 16) is **DENIED**.

(2) Ms. Hill's First Amended Complaint (Dkt. 13) is dismissed without prejudice. Ms. Hill may amend her Complaint in compliance with this Order by or before March 1, 2023. If no proper amended complaint is on file by that date, the Court will close this case.

**DONE AND ORDERED** at Tampa, Florida, on February 3, 2022.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record